# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| NEA JONES, ) | |
| PLAINTIFF, ) | CASE NO.: |
| V. ) | |
| TRUSTMARK NATIONAL BANK, ) | PLAINTIFF DEMANDS TRIAL |
| DEFENDANT(S). ) | BY STRUCK JURY |
| ) | |

## COMPLAINT

COMES NOW, the Plaintiff, Nea Jones (hereinafter "Ms. Jones"), by and through the undersigned counsel, files this, her Complaint and shows upon the Court as follows

## JURISDICTION

1. This action for injunctive relief and damages is brought under 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2), The Family and Medical Leave Act. The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights caused by the Defendant.

2. This is a suit authorized and instituted under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., (ADA).

3. This suit is authorized and instituted under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. District Court jurisdiction exists under 29 U.S.C. §§ 215(a)(3) and 217.

4. Ms. Jones timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).[1]  Ms. Jones further sued within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

**PARTIES**

5. Plaintiff, Nea Jones, ("Ms. Jones" or "Plaintiff") is a resident of Montgomery County, and performed work for the Defendant in the counties composing the  during the events of this case.  Thus, under 28 U.S.C. § 1391(b), venue for this action lies in the  Division.

6. Ms. Jones was an employee within the contemplation of 29 U.S.C. § 203(e)(1).

7. Defendant Trustmark National Bank ("Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.

8. Defendant employed at least fifty (50) people for each working day during each of 20 or more calendar workweeks in the current or preceding calendar

---

[1] Ms. Jones retained the undersigned as counsel on November 26, 2024, and mistakenly filed an EEOC charge (Charge No/ 420-2025-00448) on November 4, 2024.  The EEOC issued a Right to Sue on November 8, 2024. Counsel was not made aware until after the Right to Sue was issued. The EEOC Charge No. 420-2025-00448 was filed with the assistance of an EEOC investigator but does not encompass everything related to the claims in this instant case. On or about December 18, 2024, the undersigned filed a new charge with the EEOC relating to the same issues. The undersigned will amend the Complaint as soon as the second Right to Sue is issued.

year. Defendant employed these fifty (50) employees within 75 miles of Ms. Jones's worksite.

## FACTS

9. Ms. Jones incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

10. Ms. Jones Nea Jones began working for Defendant on or about August 1, 2023, as a Community Banking Assistant.

11. Ms. Jones has one or more disabilities that substantially limit her in one or more major life activities.

12. On or about June 11, 2024, Ms. Jones was diagnosed with breast cancer.

13. On the same day, Ms. Jones informed her immediate supervisor, Vice President Roger Teel, about her diagnosis.

14. Roger Teel informed the President of Montgomery Market, Tod Etheridge, and notified the Human Resources Department about Ms. Jones's diagnosis.

15. On or about June 12, 2024, Ms. Jones's interactions with Roger and other colleagues changed noticeably.

16. Edmond Driver, another supervisor, no longer wanted Ms. Jones to deal with his clients.

17. Roger Teel stopped giving Ms. Jones assignments and instead assigned them to another Community Banking Assistant who did not have breast cancer.

18. Roger also stopped responding to Ms. Jones's emails.

19. Roger suggested that Ms. Jones take a leave of absence.

20. Ms. Jones delayed her treatments as much as possible and began FMLA leave on August 1, 2024.

21. Ms. Jones started chemotherapy treatments during her FMLA leave and was not expected to return to work until October 1, 2024.

22. While on FMLA leave, Roger requested that Ms. Jones come into the office to submit her time and meet with him and Tod about her medical progress.

23. During a virtual meeting in August, Roger and Tod asked Ms. Jones about the progress of her chemotherapy and the number of treatments she had left.

24. Ms. Jones returned to work on October 1, 2024, with her doctor's release to work but with a work-from-home restriction.

25. Ms. Jones provided the doctor's release and restrictions to HR upon her return.

26. Ms. Jones also submitted documents regarding an upcoming scheduled surgery.

27. On October 2, 2024, HR contacted Roger to discuss Ms. Jones working from home in accordance to Ms. Jones's doctor's recommendations.

28. Roger called Ms. Jones into his office while he and HR were on the phone and expressed his surprise about the need for accommodation.

29. Ms. Jones requested a laptop to work from home due to the effects of chemotherapy.

30. Roger stated that he was not sure how that would work.

31. HR asked Ms. Jones to contact her doctor and have the work-from-home restriction removed if she wanted to continue working, as the request would not be accommodated.

32. Ms. Jones's doctor reluctantly removed the restriction, and Ms. Jones continued to work in the office.

33. Ms. Jones was confused as to why she was not allowed to work from home, especially since she had been permitted to do so earlier in the year when her son was sick.

34. Roger continued to withhold work assignments from Ms. Jones.

35. Ms. Jones emailed Roger about her upcoming surgery appointments, but Roger did not respond.

36. On October 29, 2024, Ms. Jones received a satisfactory performance evaluation.

37. During the evaluation, Roger expressed his belief that the job was not suitable for Ms. Jones due to her surgeries and lack of work-from-home opportunities.

38. However, in January 2024, Roger allowed Ms. Jones to work from home to take care of her sick child for a few days.

39. Roger suggested that Ms. Jones look for another job within Trustmark that would allow her to work from home.

40. Ms. Jones applied but did not receive the position she applied for.

41. On October 30, 2024, Roger reiterated that a work-from-home job would be better for Ms. Jones.

42. Feeling pressured by these statements and actions, Ms. Jones resigned on November 1, 2024, five days before her scheduled surgery.

43. Defendant accepted Ms. Jones's resignation but failed to accurately pay her for the time she worked since returning from FMLA leave on October 1, 2024.

**COUNT I: ADA FAILURE TO ACCOMMODATE**

44. Ms. Jones incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

45. Ms. Jones has been diagnosed with breast cancer.

46. Ms. Jones's disabilities substantially limit her in one or more major life activities.

47. Ms. Jones required the reasonable accommodation of working from home.

48. Ms. Jones requested that Defendant provide reasonable accommodation.

49. Ms. Jones was able to perform the essential functions of her job with the requested accommodation for her disabilities.

50. Defendant failed to engage in the interactive process required by the Americans with Disabilities Act, even though Ms. Jones was able to perform the essential functions of her job.

51. As a result of Defendant's violation of the ADA, Ms. Jones has been damaged, suffering loss of pay, benefits, and mental anguish.

**COUNT II: ADA DISCRIMINATION - TERMINATION**

52. Ms. Jones incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

53. Ms. Jones suffers from the physical impairment of breast cancer.

54. Defendant knew of Ms. Jones's disability.

55. Ms. Jones's disability substantially limits her in one or more major life activities.

56. Ms. Jones was able to perform the essential functions of her job with or without accommodation for her disability.

57. At all times relevant to this complaint, Ms. Jones performed her job duties in a satisfactory or better manner.

58. On November 1, 2024, Defendant constructively terminated Ms. Jones's employment due to her disability.

59. There is no logical, medical, or other basis to believe that Ms. Jones's disability would prevent her from performing the essential functions of the job.

60. But for Ms. Jones's disability, Defendant would have retained her in her position as a Community Banking Assistant.

61. Defendant violated the ADA by terminating Ms. Jones's employment because of her disability.

62. Because of Defendant's violation of the ADA, Ms. Jones has been damaged, suffering loss of pay, benefits, and mental anguish.

**COUNT III: ADA RETALIATION**

63. Ms. Jones incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

64. Ms. Jones was qualified for her position and able to perform the essential functions of the job.

65. On or about October 1, 2024, Ms. Jones engaged in a protected activity when she requested accommodation for her disability, breast cancer.

66. On or about November 1, 2024, Defendant constructively terminated Ms. Jones's employment.

67. But for Ms. Jones's protected activity, Defendant would have retained her in her position as a Community Banking Assistant.

68. Defendant violated the ADA by retaliating against Ms. Jones for engaging in protected activity.

69. Because of Defendant's violation of the ADA, Ms. Jones has been damaged, suffering loss of pay, benefits, and mental anguish.

**COUNT IV: FMLA RETALIATION**

70. Ms. Jones incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

71. During the 12-month period before August 1, 2024, Defendant employed Ms. Jones for at least 1,250 hours of service.

72. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

73. During the week of August 1, 2024, Defendant employed fifty or more employees within 75 miles of the location where Ms. Jones worked.

74. In July 2024, Ms. Jones provided notice of FMLA leave to Defendant.

75. Ms. Jones provided notice of her need for FMLA leave as soon as practicable due to her medical emergency.

76. Defendant constructively terminated Ms. Jones's employment on November 1, 2024.

77. Defendant's employees knew that Ms. Jones suffered from FMLA-qualifying conditions that required treatment.

78. Defendant's manager decided to constructively discharge Ms. Jones's employment in whole or in part because of Ms. Jones's exercise of her FMLA rights.

79. Because of Defendant's retaliatory constructive discharge decision in violation of the FMLA, Ms. Jones has been damaged, suffering loss of pay and benefits.

**COUNT V: FMLA INTERFERENCE**

80. Ms. Jones incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

81. During the 12-month period before August 1, 2024, Defendant employed Ms. Jones for at least 1,250 hours of service.

82. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

83. During the week of August 1, 2024, Defendant employed fifty or more employees within 75 miles of the location where Ms. Jones worked.

84. In July 2024, Ms. Jones provided notice of foreseeable FMLA leave to Defendant.

85. Ms. Jones provided notice of her need for FMLA leave the same day the need for FMLA leave arose.

86. Ms. Jones took leave under the FMLA beginning on August 1, 2024.

87. On or about October 1, 2024, Ms. Jones sought to return from her leave.

88. Defendant interfered with Ms. Jones's FMLA rights while she was on leave.

89. Because of Defendant's interference it violated Ms. Jones's FMLA rights.

**COUNT VI: FLSA VIOLATIONS**

90. Ms. Jones incorporates by reference and realleges each of the preceding paragraphs as if set out herein.

91. During the three years preceding the filing of this Complaint, Defendant is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

92. During the three years preceding the filing of this Complaint, Defendant has been a company whose employees, including Ms. Jones, are engaged in

interstate commerce and whose employees handle and/or work on goods moved in and/or produced in commerce.

93. Defendant's gross annual volume of revenue exceeds $500,000.

94. Defendant was an employer of Ms. Jones as defined by 29 U.S.C. § 203(d).

95. During the three years preceding the filing of this Complaint, Ms. Jones and all others similarly situated were employees of Defendant as defined by 29 U.S.C. § 203(e)(1).

96. Ms. Jones and all similarly situated employees were engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant.

97. Ms. Jones's interstate commercial activity included handling, selling, and processing transactions for goods that moved in interstate commerce.

98. Defendant failed to pay Ms. Jones for all hours worked.

99. As a result of Defendant's willful and intentional violation of the FLSA, Ms. Jones has been damaged, suffering loss of wages.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Jones respectfully prays for the following relief:

A. Grant Ms. Jones a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the Americans with Disabilities Act;

  B. Grant Ms. Jones a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Age Discrimination in Employment Act.

  C. Grant Ms. Jones a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Title VII of the Civil Rights Act of 1964;

  D. Grant Ms. Jones a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Age Discrimination in Employment Act.

  E. Grant Ms. Jones a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of Section 1981;

  F. Grant Ms. Jones a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at

the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

  G. Grant Ms. Jones a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting with the Defendant and at the Defendant's request from continuing to violate the terms of the Fair Labor Standards Act;

  H. Enter an Order requiring the Defendant to make Ms. Jones whole by awarding reinstatement to the position she would have had, had she not been terminated;

  I. Award back pay, with employment benefits, front pay, liquidated damages; compensatory damages, special damages; punitive damages nominal damages;

  J. Attorneys' fees and costs;

  K. Ms. Jones requests that the Court award Ms. Jones equitable relief as provided by law; and,

  L. Any different or additional relief as determined by the Court to which Ms. Jones is entitled.

**JURY TRIAL DEMANDED**

/s/ *Porcha Anthony Davis*
_____
Porcha Anthony Davis

**OF COUNSEL:**

The Workers' Firm
2 20th St. North Suite 900
Birmingham, AL 35203
T: 205.564.9005 F: 205.564.9006

PLEASE SERVE DEFENDANT AS FOLLOWS

Trustmark National Bank
401 Adams Avenue
Montgomery, AL 36104